UNITED STATES DISTRICT COURT
DITRICT OF MASSACHUSETTS

| | |
|---|---|
| E.J. and CARL J.,<br><br>Plaintiffs<br><br>v.<br><br>HARVARD PILGRIM HEALTH CARE, INC., UNITED HEALTH CARE AND OPTUM,<br><br>Defendants | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs E.J. and Carl J. ("Plaintiffs") bring this action against the Defendants, Harvard Pilgrim Health Care, Inc. ("HPHC"), United Health Care ("UHC") and Optum (collectively referred to as "Defendants"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). E.J. is a participant in the Harvard Pilgrim HMO Plan (the "Plan"), an ERISA welfare benefit plan, whose plan and claims administration are handled by UHC and HPHC. The Plan is fully insured by a policy of insurance issued by HPHC.

2. This Complaint challenges the Defendants': 1) failure to disclose all relevant documents utilized in its decision to limit E.J.'s benefits as required by ERISA; 2) failure to provide E.J. with a full and fair review of E.J.'s claim; and 3) failure to provide a reasonable claims procedure that would yield a decision on the merits of E.J.'s claim.

3. The Plaintiffs are filing this action to obtain the documents required to permit E.J. to perfect her appeal of Defendants' erroneous decision to limit her benefits, to enforce her rights under the Plan and under ERISA, to clarify her rights under the terms of the Plan, and to recover

1

costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. E.J. resides in New Hampshire. At the time of her treatment, which is the subject of this Complaint, E.J. was a minor, insured under the Plan.

6. Carl J. is E.J.'s father.

7. United Health Care, under the brand "Optum," reviews and renders coverage decisions on mental health services for Harvard Pilgrim Health Care, Inc. members.

8. The defendant, Harvard Pilgrim Health Care, Inc., is a for-profit corporation, with its principal place of business at 1 Wellness Way, Canton, Massachusetts. Harvard Pilgrim Health Care, Inc. is responsible for insuring claims made under the Plan, administering claims under the Plan, and making decisions regarding Plan participants' eligibility for benefits.

9. At all times relevant to the claims asserted in this Complaint, United Health Care, Optum and Harvard Pilgrim Health Care, Inc. purported to act as ERISA claims fiduciaries with respect to participants of the Plan, generally, and specifically, with respect to E.J., within the meaning of ERISA.

10. The Plan under which Plaintiffs are suing is a health insurance plan defined by ERISA, 29 U.S.C.§1002(1).

## STATEMENT OF FACTS

**Insurance Entitlement, Definitions of Disability, Discretion**

11. As a Plan beneficiary, E.J. is entitled to health insurance benefits, under a contract of insurance between Carl J.'s employer and HPHC.

12. UHC and Optum (collectively referred to as "UHC") and HPHC administer the Plan under which the Plaintiffs are suing.

13. HPHC is responsible for rendering the final determination as to coverage decisions on mental health claims for HPHC members.

14. Under the terms of the Plan, neither UHC nor HPHC has discretionary authority to determine a claimant's eligibility for health insurance benefits and to interpret the terms and provisions of the Plan.

15. The Plan provides coverage for Applied Behavioral Analysis ("ABA") services.

16. E.J. meets the Plan standard for coverage for ABA services.

**E.J.'s Claim for Benefits**

17. E.J. has been receiving ABA services for over 13 years.

18. On February 18, 2022, Defendants partially denied E.J.'s claim for ongoing ABA services.

19. Defendants' denial of coverage followed their denial of ABA services from August 14, 2018 through February 4, 2019, which was overturned by HPHC on January 31, 2020, following an extensive internal appeals process managed by both UHC and HPHC.

20. UHC's February 18, 2022 denial letter indicates: "You have the right to receive, free of charge, all documents, records or other information relevant to your appeal. . . . You may request, free of charge, a copy of our rules that govern the Optum appeal process and any internal rule, protocol or Clinical Criteria relied on to decide your appeal" (collectively referred to as E.J.'s "Claim File").

21. On March 2, 2022, counsel for the Plaintiffs requested a copy of E.J.'s Claim File. The letter informed Defendants of the documents requested, and its legal obligations under ERISA. The letter further informed Defendants that failure to provide the requested documents within thirty (30) days may result in a penalty of $110 per day pursuant to ERISA's implementing regulations.

22. On March 11, 2022, counsel for the Plaintiffs sent UHC a signed authorization, which permitted Defendants to disclose information regarding E.J.'s claim to counsel for the Plaintiffs.

23. On April 1, 2022, counsel for the Plaintiffs wrote UHC again following up on E.J.'s March 2, 2022 request for a copy of her Claim File.

24. On April 5, 2022, counsel for the Plaintiffs received a telephone message from UHC stating that the Claim File had been issued but could only be mailed.

25. On April 8, 2022, counsel for the Plaintiffs called UHC to inquire as to the status of the disclosure of E.J,'s Claim File. Counsel's office was informed that the Claim File was allegedly mailed on April 5, 2022 but had not yet been delivered.

26. On April 22, 2022, counsel for the Plaintiffs called UHC to follow-up on E.J.'s Claim File as it had yet to be received. Counsel's office was informed that an "agent" would contact the department handling the file and would subsequently contact counsel's office with the date, address, and tracking information of the file that was allegedly sent.

27. UHC did not return E.J.'s counsel's call until April 25, 2022, when UHC left counsel for the Plaintiffs' office a voicemail message confirming that the Claim File was forwarded to counsel's office and provided tracking information, which showed that the file was allegedly delivered by UPS on March 23, 2022.

28. UHC's claim that the Claim File was delivered on March 23, 2022, contradicted its prior

statement that the Claim File was mailed on April 5, 2022.

29. On April 29, 2022, counsel for the Plaintiffs called UHC to inform it that the Claim File was never delivered and requested another copy of E.J.'s Claim File.

30. On May 11, 2022, counsel for the Plaintiffs called UHC to follow-up on the status of the Claim File. Counsel's office was informed that the file was still being compiled. Counsel's office was informed that the request would be expedited and once tracking information was available, UHC would call back with the information.

31. UHC never called counsel for the Plaintiffs as promised during this call.

32. On May 23, 2022, counsel for the Plaintiffs called UHC to follow up on the status of its disclosure of the Claim File. The UHC agent with whom counsel's office spoke was unable to confirm the status of its disclosure. The agent informed counsel's office that he would follow up with the department that handles claim files and would call back with tracking information or a status update the next day. Counsel for the Plaintiffs requested that the request be escalated if still in process. Counsel for the Plaintiffs further asked whether it would be possible to provide the file electronically given the passage of time and the difficulty UHC appeared to be experiencing in disclosing the documents. Counsel's office was informed that it was impossible to disclose the file electronically.

33. UHC never returned counsel's call as promised on May 23, 2022.

34. As of the date of the filing of this Complaint, Defendants have yet to disclose a copy of E.J.'s Claim File promised by its denial letter and required to be disclosed by ERISA.

35. Defendants' thirty (30) days to respond to Plaintiffs' request for a copy of her Claim File expired on April 1, 2022.

36. E.J. has been unable to exercise her rights under ERISA as a result of Defendants' willful withholding of her Claim File.

37. Defendants' failure to disclose E.J.'s Claim File within thirty (30) days of her written request, as required by ERISA, has prejudiced E.J.'s ability to pursue her claim for coverage of her medically necessary health insurance benefits.

**ERISA's Disclosure Requirements**

38. Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for information about employee benefits and the documents relevant to a claim for benefits. Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

39. Specifically, 29 U.S.C. § 1132(c) provides for penalties for an administrator's refusal to supply required information. Specifically, 29 U.S.C. § 1132(c) indicates:

> (1) *Any* administrator….[who fails to provide certain information]
>
> > (B) who fails or refuses to comply with a request for any information which such administrator is ***required by this subchapter to furnish*** to ***a participant or beneficiary*** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

40. The penalty is due to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

41. This penalty applies to the failure to provide the documents relevant to the Plan: "(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of

6

the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence. 29 U.S.C. §1024(b)(4).

42. In addition to the summary plan descriptions and other documents under which the plan is operated, 29 U.S.C. §1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished:

> (c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and ***any other report, statements or documents*** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), ***which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.***

[emphasis added]

43. Pursuant to §109(c) and 502(c) together, the Secretary is given authority to establish the format and content of what documents are required to be produced "by this subchapter." Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a § 502(c) penalty.

44. Also, the Secretary has general authority under "this subchapter" to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this title. 29 U.S.C. § 1135.

45. The Secretary of Labor's ERISA claim procedures regulations, set out in 29 C.F.R. § 2560.503-1 (h)(2)(iii) describe the documents an administrator must disclose upon written

request.

46. The regulations state that, to provide a full and fair review, a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

47. Whether a document, record, or other information is relevant to a claim for benefits is determined by reference to 29 C.F.R. § 2560.503-1 (m)(8).

48. The Secretary explained at 29 C.F.R. § 2560.503-1 (m)(8) that the following documents are relevant to the claim, and are thus required to be produced under ERISA:

> (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

49. Defendants had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

50. Defendants as the claims administrator and plan administrator were in possession of all the documents requested by E.J. Moreover, Defendants were the only entities with any obligation to provide the documents who were also in possession of the documents requested.

51. To date, Defendants have failed to respond to E.J.'s request for these documents.

52. The Defendants' failure to respond to E.J.'s requests have prohibited E.J. from properly

determining her rights under the Plan and from exhausting her administrative remedies under ERISA.

## FIRST CAUSE OF ACTION

### (PENALTY AGAINST DEFENDANTS AS THE ADMINISTRATORS OF THE PLAN FOR FAILURE TO PROVIDE DOCUMENTS)

53. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

54. Under ERISA 29 U.S. Code § 1132 (a), "a civil action may be brought (1) by a participant or beneficiary (A) for relief provided for in subsection (c) of this section."

55. E.J. as a Plan participant and beneficiary has a right to enforce this obligation and seek redress of an administrator's violation.

56. Subsection (c) of 29 U.S.C. § 1132 notes that any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary," shall be "in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

57. On information and belief, HPHC is the plan administrator of E.J.'s Plan.

58. On information and belief, UHC and HPHC are the claims administrators for the Plan, and together control the entire claims and appeals process.

59. 29 U.S.C. § 1132(c), the terms of the Plan, and Defendants own interpretation of ERISA's requirements and the Plan terms as articulated in its February 18, 2022 letter require Defendants to disclose E.J.'s Claim File to her within 30 days of a written request for information.

60. 132 days have passed since E.J. requested a copy of her Claim File. 105 days have passed since Defendants were required to disclosed E.J. Claim File.

61. At $110 per day, Defendants should be penalized $11,550 for their failure to disclose E.J.'s Claim File pursuant to her written request.

62. Defendants' actions in failing to provide E.J. with a copy of the documents relevant to Defendants' adverse benefit decision and the Plan documents constitutes a violation of ERISA.

63. E.J. has been harmed by Defendants' failure to provide such documents. Her ability to pursue her appeal of Defendants' adverse benefit decision has been negatively impacted by Defendants' failure to disclose a copy of E.J.'s Claim File and the Plan documents.

64. Defendants' disregard for ERISA's requirement that they disclose a copy of her Claim File in response to a denial of health insurance benefits mandates the application of the maximum penalty for the withholding of documents pursuant to ERISA.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (ALL DEFENDANTS)

65. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

66. Defendants failed to provide E.J. with the information required by ERISA to pursue its unsupported adverse benefit decision.

67. As a direct, proximate, and foreseeable result of the Defendants' misconduct, E.J. has been injured and is entitled to equitable and other relief.

68. E.J. is entitled under 29 U.S.C. § 1132 to an order requiring the Defendants to provide her with her Claim File and the requested Plan documents.

69. E.J.'s pursuit of this matter benefits all members of the Plan, particularly those individuals unaware of ERISA's disclosure requirements, the timeframes for those disclosures, and how to effectively appeal an adverse benefit decision.

## THIRD CAUSE OF ACTION
### (Attorneys' Fees and Costs)

**(ALL DEFENDANTS)**

70. Plaintiffs reallege each of the paragraphs above as if fully set forth herein.

71. Under the standards applicable to ERISA, Plaintiffs deserve to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. §1132(g).

72. The Defendants have the ability to satisfy the award.

73. Plaintiffs conduct of this action is in the interests of all participants who subscribe to the Plan, particularly those whose benefits have been denied, and the relief granted hereunder will benefit all such participants.

74. The Defendants acted in bad faith in denying E.J.'s benefits under the Plan.

75. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully prays that the Court:

(1) Declare, adjudge and decree that Defendants are required to disclose its Claim File to E.J., without any redaction or withholding of documents.

(2) Declare, adjudge and decree that the Defendants are required to pay E.J. the full amount of the statutory penalty under 29 U.S.C. § 1132(c)(1) as of the date the documents are disclosed to Plaintiffs.

(3) Order that the Defendants make restitution to Plaintiffs in the amount of any losses sustained by Plaintiffs in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Dated: July 15, 2022                                Respectfully submitted for the Plaintiffs,

By:  */s/ Mala M. Rafik*
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  mmr@rosenfeld.com